[Civ. No. 361.   Third Appellate District.—November 22, 1907.]

PAUL C. HARLAN, Appellant, v. GLADDING, McBEAN & COMPANY (a Corporation), and JACOB KUNZLER, Respondents.

ORDER FOR PAYMENT OF PART OF FUNDS—EQUITABLE ASSIGNMENT NOT EFFECTED—REVOCATION BEFORE ACCEPTANCE.—An order for payment of part of the funds of the maker in the hands of a third party does not operate as an equitable assignment *pro tanto* of the fund, while the order remains unaccepted by the holder of the funds, and such order may be revoked at the pleasure of the maker at any time before acceptance by the party on whom it is drawn.

ID.—ACTION NOT PERMISSIBLE AFTER NOTICE OF REVOCATION.—After notice of revocation of the order by the maker to the party on whom it is drawn, and the refusal of said party thereafter to accept or pay the same, no action will lie upon the order either against the maker or against the holder of the funds.

ID.—DURESS OF GOODS—ILLEGAL ATTACHMENT—RESCISSION.—Where the order was procured by the plaintiff under duress of an illegal

7 Cal. App.—4

attachment of the hay of the maker of the order, out of the proceeds of the sale of which the funds were derived, and the order was given to release the hay from such duress in order that the hay might be sold, the plaintiff had the right promptly to rescind the order, and to notify the holder of the proceeds of the hay not to pay the same.

ID.—VOID ATTACHMENT BY JUSTICE IMPROPERLY CALLED IN—WANT OF JURISDICTION.—Another justice of the peace cannot be called in to act during the illness of the justice of the peace of the township, in which the plaintiff resides, without a written request from such justice; and a mere oral request by him to the plaintiff to secure the attendance of such justice could confer upon him no jurisdiction in such township to issue a writ of attachment upon the hay of the defendant; and the unlawful detention of the hay under such void writ constitutes duress thereof, entitling plaintiff to rescind an order given to secure the release of the hay from such duress.

ID.—RESTORATION UPON RESCISSION NOT REQUIRED.—There being nothing to restore upon rescission of the order, no restoration was required to effect a rescission thereof.

APPEAL from a judgment of the Superior Court of Solano County. L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

Paul C. Harlan, and W. U. Goodman, for Appellant.

Alexander G. Eells, H. K. Eells, and T. T. C. Gregory, for Respondents.

BURNETT, J.—The nature of the action is shown by the following allegation of the complaint:

."On January 6, 1904, . . . defendant herein, Jacob Kunzler, for a valuable consideration, duly assigned, by means of a written assignment and order to plaintiff herein, the claim of said defendant Jacob Kunzler against said defendant Gladding, McBean and Company (a corporation), for two hundred and twenty dollars of the sum to be thereafter paid by said defendant Gladding, McBean and Company to said defendant Jacob Kunzler for a certain lot of tule hay on said January 6, 1904, in course of shipment by said defendant Jacob Kunzler to said defendant Gladding, McBean and Company; that said written assignment and order was, upon said

January 6, 1904, and at and in the said County of Solano, executed and delivered to plaintiff herein by said defendant Jacob Kunzler; and that said written assignment and order was and is in the words and figures following, to-wit:

" 'Suisun, Cal., Jan. 6, 1904.

" 'To Gladding, McBean and Company:

" 'You are hereby directed to pay to Paul C. Harlan, Esq., two hundred and twenty dollars from the proceeds of the lot of tule hay now in course of shipment to your firm from this place.

" '(Signed)   JACOB KUNZLER.' "

Judgment was for defendants, from which plaintiff brings the appeal on a bill of exceptions.

The court finds that the instrument in writing set out in the complaint was "made, executed and delivered by said defendant Kunzler to plaintiff; that thereafter the plaintiff presented said instrument to said Gladding, McBean & Company and demanded payment thereof; that prior thereto said Kunzler notified, directed and ordered said Gladding, McBean & Company not to pay said plaintiff anything upon said written instrument if the same were presented, and that he had revoked it; that thereupon said Gladding, McBean & Company refused to pay to plaintiff any money upon said order; that at the time of such presentment of said order said Gladding, McBean & Company had in its possession to the credit of said Kunzler, as the proceeds and price of said lot of tule hay, more than sufficient money to pay said order; that there is another action pending between plaintiff's assignee and the defendants involving the same cause of action, and that said order was made "under duress and is without consideration, void and of no effect." All the adverse findings are challenged by appellant as not supported by the evidence.

There is also a controversy between the parties as to the effect of the said written instrument, the appellant contending that it amounted to an equitable assignment to him *pro tanto* of the fund in the hands of the corporation due Kunzler; while respondents maintain that it was a mere order revokable by the drawer before acceptance by the drawee and resulting in an equitable assignment only in case of said acceptance.

It will be observed that there is nothing in the form of the instrument to indicate an assignment.

It is simply an order upon Gladding, McBean & Company given to plaintiff by Kunzler for the payment of a part of the fund in the hands of said company belonging to said Kunzler.

There is nothing in the evidence to indicate that the instrument was intended as other than what its language imports.

There seems no difference in principle between an order like this and the case of a check or bill of exchange.

In *Pullen* v. *Placer County Bank,* 138 Cal. 172, [66 Pac. 740, 71 Pac. 83], in reference to checks, it is said: "A check is only a direction to the bank to pay a certain sum of money to the person therein named. The money does not thereby become the property of the payee, nor is it placed beyond the control of the depositor. Until it is presented to the bank, the drawer may countermand its payment, or he may direct a different disposition of the moneys to his credit."

In *Donohoe-Kelly Banking Co.* v. *Southern Pacific Co.,* 138 Cal. 190, [94 Am. St. Rep. 28, 71 Pac. 93], it is said: "Turning to the view of the question presented by appellants, we find the cases quite numerous holding that an *order, check* or bill of exchange drawn for a part of a fund, does not operate as an assignment of that part or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft."

In the last-cited opinion a large number of cases is reviewed, among them *Harrison* v. *Wright,* 100 Ind. 515, [58 Am. Rep. 805], wherein it is declared: "In the absence of evidence to the contrary, or of a showing of an intention to assign a part of a fund in the hands of a drawee . . . it should be presumed that the payee or holder of a check takes it upon the credit of the drawer, of whom he may collect if payment be refused by the drawee."

Here the evidence shows without conflict that Kunzler notified Gladding, McBean & Company that he had revoked said order, and said company thereupon refused and declined to accept it and notified plaintiff of the revocation.

Under such circumstances an action upon said order would not lie against either of the defendants.

Again, assuming that the instrument in question consti-
tuted an assignment, the court found that it "was made un-
der duress." In this connection respondents contend that the
action of the plaintiff in securing the order constitutes "co-
ercion of the most pronounced degree." To understand re-
spondents' position it will be necessary to bear in mind that
the justice of the peace in Suisun township, A. F. Hitchcock,
was ill and he requested plaintiff to get Justice Klahn, of
Green Valley township, in the same county, to sit for him in
the case. Plaintiff accordingly secured Justice Klahn, and
after the proper preliminary proceedings were taken he
issued the writ of attachment which was levied upon Kunz-
ler's hay.

Section 105 of the Code of Civil Procedure provides a cer-
tain course to be taken to give authority or jurisdiction to a
justice of the peace to try a cause in another township. There
must be a written request of the other justice, "and while so
acting he shall be vested with all the powers of the justice
for whom he so holds court." No such course was pursued
in this case, and hence it must be held that Justice Klahn
was without jurisdiction. It is well settled that the law pre-
sumes nothing in favor of the jurisdiction of justices' courts,
and a party who asserts a right under the judgment of a
justice must affirmatively show every fact necessary to con-
fer such jurisdiction. (*Swain* v. *Chase*, 12 Cal. 283; *Jolley*
v. *Foltz*, 34 Cal. 321; *Kane* v. *Desmond*, 63 Cal. 464; *Eltzroth*
v. *Ryan*, 89 Cal. 140, [26 Pac. 647].) As one of the steps
necessary to confer jurisdiction upon Justice Klahn was
lacking, the property of Kunzler was illegally detained by
virtue of the writ of attachment.

Section 1567 of the Civil Code provides that "An apparent
consent is not real or free when obtained through 1. Duress,"
and section 1569 provides that "Duress consists in . . . 2.
Unlawful detention of the property of any such person."

In *Brumagin* v. *Tillinghast*, 18 Cal. 271, [79 Am. Dec.
176], it is said by the court, through Chief Justice Field:
"What shall constitute the compulsion or coercion which the
law will recognize as sufficient to render payments involun-
tary, may often be a question of difficulty. It may be said
in general that there must be some actual or threatened exer-
cise of power possessed, or supposed to be possessed by the

party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money." Quotation is made with approval from *Forbes* v. *Appleton*, 5 Cush. (Mass.) 117, wherein it is said: "In general, the cases that have been treated as exceptions are cases where the possession of the property upon which the lien was claimed was already in the party demanding the money, or cases in which the party had no other means to save himself from imprisonment or his property from sale on execution or warrant of distress but by paying the money demanded."

Among other cases is also *Mays* v. *Cincinnati*, 1 Ohio St. 268, wherein it is stated that: "This unbroken chain of authority seems to warrant the conclusion that a payment of money upon an illegal or unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention or when the other party is armed with apparent authority to seize upon either and the payment is made to prevent it."

Duress means a condition of mind produced by improper external pressure or influence that practically destroys the free agency of the party and causes him to do an act or make a contract not of his own volition, but under such wrongful external pressure, and it is to be determined by all the attendant facts and circumstances. (*Pride* v. *Baker* (Tenn. Ch.), 64 S. W. 329; *Collins* v. *Westbury*, 2 Bay (S. C.), 211, [1 Am. Dec. 643].)

Duress of goods may exist when one is compelled to submit to an illegal exaction in order to obtain them from one who has them, but refuses to surrender them unless the exaction is endured. (*Fuller* v. *Roberts*, 35 Fla. 110, [17 South. 359]; *Lonergan* v. *Buford*, 148 U. S. 581, [13 Sup. Ct. 684].)

In the case at bar plaintiff testified: "I think I may have stated to him 'if you give me the order for this amount I will let the hay go.' He wanted his hay. It was then being moved from the vessel over to the train. . . . I don't remember exactly how it happened, but the understanding was that as soon as he had entered into that agreement, and we had accepted that order, we were to release that hay, because

that was the only object he had in giving the order." The foregoing would seem to establish the conclusion that the detention of the hay by plaintiff was unlawful; that its release was the moving influence, the external pressure, that induced Kunzler to execute the order or assignment, and that his act was, therefore, in contemplation of our statute, involuntary and was lacking in the element of consent which is required for a valid agreement. However, it does not follow that the contract was void, as section 1566 of the Civil Code provides that "a consent which is not free is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by the chapter on rescission."

Kunzler rescinded promptly by notifying Gladding, McBean & Company, and also plaintiff through said firm, of his revocation of said instrument, and as there was nothing for him to restore, he seems to have done all that is required by the statute to constitute rescission.

The finding as to revocation is not as explicit as it should be, but in view of the evidence it could not be in favor of appellant.

It is at least doubtful whether the court had any jurisdiction of the cause, but at any rate, the judgment for the reasons stated is correct.

The judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.