[Crim. No. 4799. In Bank. May 3, 1948.]

In re WALTER TROMBLEY, on Habeas Corpus.

Francis T. Cornish for Petitioner.

Fred N. Howser, Attorney General, Herbert E. Wenig, Deputy Attorney General, Francis W. Collins, District Attorney, Douglas N. Quinlan, Deputy District Attorney, Harold J. Fisher, Leon E. Gold and Samuel S. Berman, Attorneys for Division of Labor Law Enforcement, for Respondent.

GIBSON, C. J.—Petitioner was convicted in a justice's court in Contra Costa County under three counts of a complaint which charged him with violations of section 216 of the Labor Code in that, having the ability to pay, he wilfully refused to pay the wages due to three of his employees. A fine of $100 and a 30-day jail sentence were imposed on each count, but the jail sentences were to be suspended if, within 48 hours, petitioner paid the amounts alleged to be due as wages in the three counts of the complaint.*

The judgment of conviction was affirmed on appeal to the superior court, and petitioner seeks his discharge on habeas corpus claiming that section 216 of the Labor Code conflicts with the constitutional prohibition against imprisonment for debt (Const., art I., § 15) ; that the justice of the peace who presided at his trial acted without authority; and that the

---

\*Petitioner was also convicted and fined $25 under a fourth count of the complaint which charged him with violations of sections 204 and 207 of the Labor Code in failing to maintain semimonthly paydays or post notices thereof. No question is raised in this proceeding as to this count.

conditions upon which suspension of the jail sentence depended were beyond the power of the justice's court to impose.†

## I. CONSTITUTIONAL PROHIBITION AGAINST IMPRISONMENT FOR DEBT

Section 15 of article I of the California Constitution provides that "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud, nor in civil actions for torts, except in cases of wilful injury to person or property. . . ." Although by its terms the prohibition is directed to imprisonment in civil actions, it has been held to apply in a criminal proceeding where it appears that the legislation under which the accused is charged constitutes an attempt to make the mere act of failing to pay a debt a crime. (*People* v. *Perry*, 212 Cal. 186 [298 P. 19, 76 A.L.R. 1331]; *American Surety Co.* v. *Bank of Italy*, 63 Cal. App. 149 [218 P. 466]; *People* v. *Holder*, 53 Cal.App. 45 [199 P. 832]; *In re Crane*, 26 Cal.App. 22 [145 P. 733]; see *State* v. *Avery*, 111 Kan. 588 [207 P. 838, 23 A.L.R. 453]; *State* v. *Prudential Coal Co.*, 130 Tenn. 275 [170 S.W. 56, L.R.A. 1915B 645]; [1928] 41 Harv.L.Rev. 786; [1928] 37 Yale L.J. 509, 513; [1927] 15 Cal.L.Rev. 153.) The courts will not permit the purposes of the constitutional provision forbidding imprisonment for debt to be circumvented by mere form, and, accordingly, statutes declaring the nonpayment of an obligation to be a crime are examined in the light of this provision, and their validity is dependent upon whether the legislative objective is consistent with the constitutional guaranty.

Two California cases contain broad statements, made without analysis or discussion, to the effect that the prohibition against imprisonment for debt has no application in criminal proceedings. (See *In re Nowak*, 184 Cal. 701, 708 [195 P. 402]; *In re Oswald*, 76 Cal.App. 347, 349 [244 P. 940].)

---

†Petitioner was remanded to custody after a hearing on a similar application before the District Court of Appeal (*In re Trombley*, 78 Cal.App.2d 528 [178 P.2d 510]), and the subsequent application for the writ was made here apparently on the theory that section 1506 of the Penal Code, which permits a petition for hearing in certain cases, was not applicable. (See *In re Page*, 214 Cal. 350, 354, et seq. [5 P.2d 605].) The question as to his right to apply for such a hearing, therefore, is not presented. Moreover, decisions remanding a person to custody in habeas corpus proceedings are not a bar to subsequent applications to a higher court. (Pen. Code, § 1475; *Matter of King*, 28 Cal. 247, 251; cf. *In re Miller*, 17 Cal.2d 734 [112 P.2d 10].) *In re Trombley*, *supra*, 78 Cal.App.2d 528, is therefore not res judicata.

These statements, however, were unnecessary to the decisions because the statutes under consideration involved something more than the mere failure to pay a debt. No case has been cited or found which, on its facts, upholds legislation making mere failure to pay a debt a crime, and we see no reason to depart from the rule established by the well-considered cases in California and throughout the country to the effect that the power to prescribe punishment in a criminal case may not be used to defeat the constitutional guaranty against imprisonment for debt. Accordingly, the statements in the Nowak and Oswald cases must be disapproved, and the validity of the statute under which petitioner was convicted must be tested in the light of the constitutional provision.

Section 216 of the Labor Code reads: "In addition to any other penalty imposed by this article, any person, . . . is guilty of a misdemeanor, who:

"(a) Having the ability to pay, wilfully refuses to pay wages due and payable when demanded.

"(b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due."

Petitioner concedes that the offense set forth in subdivision (b) which expressly requires an intent to defraud, comes within the exception contained in section 15 of article I. (See *In re Sears,* 137 Cal.App. 308, 309-310 [30 P.2d 571]; *Sears* v. *Superior Court,* 133 Cal.App. 704, 708 [24 P.2d 842]; *In re Samaha,* 130 Cal.App. 116 [19 P.2d 839].) He contends, however, that he was prosecuted for a violation of subdivision (a) which he claims is unconstitutional.

Each of the three counts charged that petitioner "having the ability to pay, and payment of said wages having been demanded, did wilfully and unlawfully fail and refuse to pay . . . the wages due the said employee with intent to annoy, harass, hinder, oppress, delay, and defraud the said employee."

It seems clear that petitioner was accused of a violation of subdivision (a). Although the complaint alleged he acted with the intent specified in subdivision (b), he was not charged with having committed an act set forth in that subdivision. The charge against him was that, having the ability to pay, he wilfully refused to pay, and this is the gist of the

offense contained in subdivision (a). The conduct denounced in the two subdivisions is similar but the proscribed acts are not necessarily the same. Moreover, an essential element of the offense set forth in (a) is "ability to pay," whereas it is not a required condition in (b).

The attorney general argues that it is immaterial whether petitioner was charged under subdivision (a) or (b) because, it is claimed, the clause in (b), which expressly requires an intent to defraud, also modifies (a). In support of this construction reliance is placed on cases interpreting the section before it was codified. The Labor Code was enacted in 1937, and section 6 of chapter 202 of the Statutes of 1919* was codified in the present section 216. The former statute was construed to require a wrongful intent to defraud the employee where the employer was charged, as here, with having the ability to pay and wilfully refusing to pay wages, and it was held that the statute did not conflict with the constitutional guaranty against imprisonment for debt. (*In re Oswald,* 76 Cal.App. 347, 349 [244 P. 940]; *Sears* v. *Superior Court,* 133 Cal.App. 704, 708 [24 P.2d 842]; *In re Sears,* 137 Cal.App. 308, 309-310 [30 P.2d 571]; *In re Samaha,* 130 Cal. App. 116 [19 P.2d 839].)

■ Ordinarily, a mere change in phraseology or punctuation in the codification of an existing law will not be construed to have changed its meaning since the principal objects of the code commission in revising the statutes are to restate and clarify existing law and to correct inadvertent errors. (Stats. 1929, ch. 750, § 2; Gov. Code, §§ 10300 et seq.; *Childs* v. *Gross,* 41 Cal.App.2d 680, 687-688 [107 P.2d 424]; *De Haviland* v. *Warner Bros. Pictures,* 67 Cal.App.2d 225, 232 [153 P.2d 983].) Sometimes, however, the language of the prior statute is altered so as to change the meaning placed upon the former statute with the result that a change in the law is made through codification. (See *Hunt* v. *Authier,* 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379]; *Estate of Smith,* 4 Cal.App.2d

---

*Section 6, prior to its repeal, read:

"Any person. . . , who having the ability to pay, shall wilfully refuse to pay the wages due and payable when demanded, as herein provided, *or falsely deny the amount or validity thereof,* or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, or oppress, or hinder, or delay, or defraud, the person to whom such indebtedness is due, shall, in addition to any other penalty imposed upon him by this act, be guilty of a misdemeanor." (Italics added.)

548, 552 [41 P.2d 565] ; cf. *Scott* v. *McPheeters*, 33 Cal.App.2d 629, 633 [92 P.2d 678, 93 P.2d 562].) We are faced with that situation here.

The making of two subdivisions out of the former section, the placing of a period between those subdivisions, and the deletion of the word "or" between the acts of wilfully refusing to pay and falsely denying the amount or validity of wages have made it impossible for subdivision (a) to be modified by the last clause of subdivision (b) which requires an intent "to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due." As the section is now cast in the Labor Code, under subdivision (a), an employer, "having the ability to pay," who "wilfully refuses to pay wages due and payable when demanded" is guilty of a misdemeanor, and under subdivision (b), an employer, *regardless of ability,* who "falsely denies the amount or validity" of a claim for wages "or that the same is due" with the intent specified therein is guilty of a misdemeanor. *In re Trombley,* 78 Cal.App.2d 528 [178 P.2d 510], proceeded on the theory that the statute had not been changed by codification, and the holding in that case must, therefore, be disapproved.

It should be noted that, although petitioner was charged with the intent specified in subdivision (b) and the jury impliedly found that he had such intent, he is nevertheless entitled to be discharged if subdivision (a), which does not expressly require an intent to defraud, is unconstitutional. (See *In re Bell,* 19 Cal.2d 488, 495 et seq. [122 P.2d 22].) The question therefore is whether the conduct denounced in subdivision (a) is fraudulent within the meaning of the exception contained in section 15 of article I.

The word "wilfully" as used in criminal statutes implies a purpose or willingness to commit the act (Pen. Code, § 7, subd. 1), and although it does not require an evil intent, it implies that the person knows what he is doing intends to do what he is doing and is a free agent. (See *People* v. *Gory,* 28 Cal.2d 450, 458 [170 P.2d 433] ; *People* v. *Johnson,* 14 Cal. App.2d 373, 380 [58 P.2d 211] ; *Davis* v. *Morris,* 37 Cal.App. 2d 269, 274 [99 P.2d 345] ; *People* v. *Swiggy,* 69 Cal.App. 574, 580, 581 [232 P. 174] ; *People* v. *California Protective Corp.,* 76 Cal.App. 354, 363 [244 P. 1089].) Subdivision (a), construed together with the Penal Code definition of the word "wilful," makes it a crime for an employer having

the ability to pay, knowingly and intentionally to refuse to pay wages which he knows are due. A similar construction was placed on section 203 of the Labor Code which imposes penalties where an employer "wilfully fails to pay . . . wages of an employee who is discharged or who quits." In interpreting that section, it was recognized that a dispute in good faith as to whether any wages were due would be a defense to an action for such penalties. (*Davis* v. *Morris*, 37 Cal.App.2d 269 [99 P.2d 345].) Subdivision (a), therefore, does not, as contended by petitioner, make the mere failure to pay wages a crime, nor does it subject an employer to imprisonment who disputes in good faith an employee's claim for wages.

The cases of *In re Crane*, 26 Cal.App. 22 [145 P. 733], and *People* v. *Holder*, 53 Cal.App. 45 [199 P. 832], holding statutes unconstitutional, and relied on by petitioner, are not in point since the provisions there under consideration did not require either "wilfulness" or "ability to pay."

The case of *People* v. *Perry*, 212 Cal. 186 [298 P. 19, 76 A.L.R. 1331], relied upon by the attorney general, concerns a related problem but it is not conclusive authority for the validity of the statute involved here. The statute in the Perry case provided that "any person who represents himself as a 'cash buyer' but who is not a cash buyer as defined in this act; . . . or any cash buyer as defined in this act who wilfully refuses to make payment for deciduous fruit as and when required by this act, is guilty of a felony." A "cash buyer" was defined as a person, having a regular business address in California, who furnishes such address to the grower with whom he has business, who represents himself as a cash buyer and purchases fruits for resale from a grower, and who, within 48 hours after demand, pays the purchase price agreed upon. It is clear that the portion of the statute which made it a crime for any person to represent himself as a "cash buyer," but who was not so in fact, comes within the fraud exception contained in the constitutional provision. Defendant Perry, however, was *not* charged under that portion of the act; he was proceeded against as a "cash buyer" who purchased grapes from a grower and wilfully refused to pay therefor following a demand in writing, as required by the act. The court nevertheless held that the statute did not violate the constitutional prohibition against imprisonment for debt.

The decision in the Perry case characterizes the conduct of one who purchases fruit on the representation that he will pay therefor on demand and who thereafter wilfully refuses to pay, as obtaining property "under false promises and fraudulent misrepresentation." This conduct, however, does not differ in respect to representations from the ordinary transaction where a purchaser promises he will pay on demand and thereafter wilfully refuses to do so. Furthermore, the court did not discuss the fact that the statute there under consideration did not provide that the debtor have ability to pay, and it would seem doubtful that such a condition could be properly implied from the use of the word "wilful," or the statutory definition of "cash buyer." A similar implication is, of course, not necessary here since, as we have seen, subdivision (a) expressly makes ability to pay an essential element of the offense. Because of the differences in the statutes and the character of the transactions it is unnecessary for us to determine the correctness of the result of the Perry case, but the decision may be accepted as authority for the proposition that if the act denounced is itself fraudulent, that is, it is one which necessarily accomplishes a fraud, then it is unnecessary that the statute contain an express provision requiring an intent to defraud.

We return to the question whether an employer, who, having the ability to pay, intentionally refuses to pay wages he knows are due, perpetrates a "fraud" within the meaning of the provision which excepts "cases of fraud" from the prohibition against imprisonment for debt. The historical background of section 15 of article I and similar constitutional guaranties of other states clearly shows that the provisions were adopted to protect the poor but honest debtor who is unable to pay his debts, and were not intended to shield a dishonest man who takes an unconscionable advantage of another. (I Debates and Proceedings of the Constitutional Convention, 1878-1879, 265-268; Code Civ. Proc., § 715; *Gault* v. *Gault*, 112 N.J.Eq. 41 [163 A. 139]; see *Clark* v. *State*, 171 Ind. 104 [84 N.E. 984, 16 Ann.Cas. 1229].) It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due. (*In re Bal-*

*lestra,* 173 Cal. 657, 658 [161 P. 120]; *In re Moffett,* 19 Cal. App.2d 7, 19 [64 P.2d 1190]; *Moore* v. *Indian Spring etc. Min. Co.,* 37 Cal.App. 370, 379 [174 P. 378]; see [1928] 41 Harv.L.Rev. 786-790.) An employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which prejudices the rights of his employee. Such conduct amounts to a "case of fraud" within the meaning of the exception to the constitutional prohibition and may be punished by statute.

II. AUTHORITY OF THE JUSTICE OF THE PEACE WHO PRESIDED
AT THE TRIAL

The justice in the township where the complaint was filed was disqualified, and without assignment by the chairman of the Judicial Council but merely at the request of the disqualified justice, the cause was tried by a justice of a neighboring township who signed the docket sheet as "(Acting) Justice of the Peace." Petitioner does not contest the validity of a substitution of justices of the peace under section 105 of the Code of Civil Procedure but contends, in reliance on that section, that the acting justice was without authority to hear the case in that the disqualified justice did not request his services in writing.*

It is unnecessary, however, to determine whether the justice was properly authorized to sit in this proceeding. The acts of a judicial officer are not subject to attack on the grounds of lack of authority in a habeas corpus proceeding where, as here, no objection to the authority of the acting justice was raised upon the trial or on appeal to the superior court, and where there is no question that he was qualified to sit at the time of the trial if he was properly substituted. (*In re Haas,* 6 Cal.App.2d 320 [44 P.2d 411].) A judicial officer who acts in such circumstances acquires de facto status. (*In re Haas,* 6 Cal.App.2d 320 [44 P.2d 411]; *State* v. *Carroll,* 38 Conn. 449 [9 Am.Rep. 409]; see *Matter of Danford,* 157 Cal. 425 [108 P. 322]; note 158 A.L.R. 529; Joseph Jarrett, *De Facto Public Officers: The*

---

*Section 105 of the Code of Civil Procedure reads in part: "At the written request of a justice of the peace . . . , another justice of the peace within the same county . . . may attend such court, and thereupon is vested with the power, and may perform all the duties, and issue all the papers or process, of the justice or judge making such request. . . ."

*Validity of Their Acts and Their Rights to Compensation*
[1936] 9 So.Cal.L.Rev. 189, 211 et seq.) Any statements
to the contrary in *Harlan* v. *Gladding, McBean & Co.,* 7 Cal.
App. 49 [93 P. 400], are disapproved. The jurisdiction of
the court, therefore, could not have been affected by any de-
fects in the manner of substituting justices.

 Petitioner further claims that the acting justice had
no authority to pronounce judgment after the appeal to the
superior court because he was a layman. The classification
of the justice court changed to Class A after the judgment
was pronounced following the trial and conviction. This
judgment was affirmed without modification upon the appeal,
and the acting justice then resentenced the petitioner in
the same terms as the first judgment. It is this sentence
which petitioner claims was made without authority. As-
suming without deciding that the acting justice had no
authority after the change in classification, the second sen-
tence after the affirmance of the judgment on appeal was
unnecessary, and it could not affect the validity of the judg-
ment from which the appeal was taken which included the
sentence pronounced at that time and the terms of which were
in no way modified on appeal. (Pen. Code, § 1263.)

### III. Power to Impose Conditions on Suspension of Jail Sentence

Petitioner attacks the power of the justice's court to make
the conditions on which his sentence would have been sus-
pended had he chosen to accept the terms imposed. As we
have seen, he was fined $100 and given a 30-day jail sentence
on each count, execution of the jail sentence to be suspended
if the petitioner paid within 48 hours the sums which it was
charged were due the employees.

 Suspension of a sentence is an act of grace and
clemency to be granted in a proper case, and a person is not
entitled to it as a matter of right. The code expressly pro-
vides that in granting probation, the court has power to
impose such ''reasonable conditions as it may determine are
fitting and proper to the end that justice may be done, that
amends may be made to society for the breach of the law,
for any injury done to any person resulting from such
breach'' and, specifically, that the court ''may provide for
reparation in proper cases.'' (Pen. Code, §§ 1203.1, 1203a.)

 Although there had been no determination in a civil suit of the sums due the employees, the court nevertheless heard the testimony with respect to their claims and could properly consider this evidence in providing for reparation. The conditions imposed do not appear to be unreasonable, and we cannot say that the court abused the discretion conferred upon it by the statute.

 It is also contended that since the civil jurisdiction of a Class B justice's court is limited to cases in which the demand is $300 or less, the court here was without power to provide for reparation in sums exceeding that amount. Many misdemeanors of which a Class B court has jurisdiction involve injuries where the reparation would be wholly inadequate if the amount were restricted to the monetary limitation on the civil jurisdiction of the court. We would unduly limit the power of the court to effectuate the purpose of section 1203.1 of the Penal Code if we were to read this restriction into the statute, and it seems clear that no such limitation was intended.

 Petitioner claims finally that because of asserted errors he "in fact had no trial." The rulings complained of were committed in the exercise of the trial court's jurisdiction and did not deprive petitioner of any constitutional rights. Accordingly they will not be reviewed in this proceeding. (*In re Lindley,* 29 Cal.2d 709, 722-723 [177 P.2d 918]; *In re Bell,* 19 Cal.2d 488, 492-495 [122 P.2d 22].)

The writ is discharged, and petitioner is remanded to custody.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.