Filed 8/18/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| JANIS S. McLEAN, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | S221554 |
| | ) | |
| v. | ) | Ct.App. 3 C074515 |
| | ) | |
| STATE OF CALIFORNIA et al., | ) | Sacramento County |
| | ) | Super. Ct. No. 34-2012- |
| Defendants and Respondents. | ) | 00119161-CU-OE-GDS |
| _____ | ) | |

Under Labor Code sections 202 and 203, an employer must make prompt payment of the final wages owed to an employee who "quits" his or her employment, or else pay statutory penalties. In this case, plaintiff Janis S. McLean, a retired deputy attorney general, filed suit against the State of California on behalf of herself and a class of former state employees who, having resigned or retired, did not receive their final wages within the time periods set out in the statute. We consider two questions arising from McLean's suit. First, do sections 202 and 203 apply when employees retire? Second, is McLean's suit subject to dismissal on the ground that it was filed against the State of California, rather than the state agency for which she had worked?

We conclude, as the Court of Appeal had held, that Labor Code sections 202 and 203 (section 202 & section 203) apply when employees retire from their employment. We also conclude that McLean's decision to name the State of

1

California as a defendant rather than the Department of Justice is not a basis for dismissing her suit. We accordingly affirm the judgment of the Court of Appeal.

## I.

The prompt payment provisions of the Labor Code impose certain timing requirements on the payment of final wages to employees who are discharged (Lab. Code, § 201 (section 201)) and to those who quit their employment (§ 202). If an employee is discharged, "the wages earned and unpaid at the time of discharge are due and payable immediately." (§ 201.) If, however, "an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." (§ 202, subd. (a).) An "employer" that "willfully fails to pay" in accordance with sections 201 and 202 "any wages of an employee who is discharged or who quits" is subject to so-called waiting-time penalties of up to 30 days' wages. (§ 203, subd. (a).)

As originally enacted, the prompt payment provisions applied only to private employers. (See Stats. 1937, ch. 90, § 220, p. 200.)[1] In 2000, the Legislature amended the Labor Code to extend these provisions to "employees directly employed by the State of California." (Stats. 2000, ch. 885, § 1, p. 6524.) The provisions continue to exempt "employees directly employed by any county,

---

[1] The Legislature first enacted a provision similar to sections 201 and 202 in 1911. (Stats. 1911, ch. 663, § 1, p. 1268.) In 1915, the Legislature provided for waiting-time penalties for a violation of this provision. (Stats. 1915, ch. 143, § 3, p. 299.) These provisions were repealed and reenacted in 1919. (Stats. 1919, ch. 202, § 1, p. 294; *id*., § 5, p. 296.) When the Legislature established the Labor Code in 1937, it adopted the 1919 provision governing prompt payment as sections 201 and 202, and the waiting-time penalty provision as section 203, both with minor modifications. (Stats. 1937, ch. 90, §§ 201, 202, 203, p. 197.)

incorporated city, or town or other municipal corporation." (Lab. Code, § 220, subd. (b).)

In 2002, the Legislature again amended the statute to add special rules governing the prompt payment of accrued leave to state employees upon termination of their employment. (Stats. 2002, ch. 40, §§ 6, 7, 8, pp. 460-462.) Subdivision (b) of section 202 now provides that, "[n]otwithstanding any other provision of law, the state employer shall be deemed to have made an immediate payment of wages under this section" for an employee's accrued leave if "the employee submits a written election to his or her appointing power authorizing the state employer to tender payment for any or all leave to be contributed on a pretax basis to the employee's account in a state-sponsored supplemental retirement plan" and the employer does so within 45 days. Subdivision (c) provides that, "[n]otwithstanding any other provision of law, when a state employee quits, retires, or disability retires from his or her employment with the state," the employee may "submit a written election to his or her appointing power authorizing the state employer to defer into the next calendar year payment of any or all of" the employee's accrued leave. The employer then must tender payment no later than February 1 of the following year. (§ 202, subd. (c).)

McLean retired from her employment in the state Department of Justice on November 16, 2010, and separated from state service on the same date.[2] Following her retirement, she filed suit under section 203 against the State of California, which she identified as her "employer," and the State Controller's Office, as "the State agency with responsibility for timely paying wages to

---

[2]    Because this case comes to us on review of a demurrer, we accept as true the allegations in McLean's complaint. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

3

California State employees." Her complaint alleged, on information and belief, that "when an employee resigns or retires from their employment with the State of California, a common payroll system governed by the State Controller is responsible for disbursing any and all wages owed to that employee."

McLean raised both individual and class claims. In support of her individual claim, McLean alleged that defendants violated section 202 by failing to pay her final wages on her last day of employment or within 72 hours after her last day; failing to deposit wages for her unused leave and vacation time to her supplemental retirement plans within 45 days of the last day of her employment, despite her request that they do so; and failing to transfer to her before February 1, 2011, wages that she had elected to defer to the 2011 tax year. In support of her class claim, McLean alleged that defendants systematically failed to make "full and prompt payment of wages as required by California Labor Code § 202" to the other members of a proposed class consisting of "employees employed by Defendant in the State of California who resigned or retired from their employment in November or December of 2010 or January, February or March of 2011."

Defendants demurred. The trial court sustained the demurrer, concluding that because McLean "retired" from her job, she had not stated a claim for statutory penalties under section 203, which applies only when employees "quit" or are "discharged." The court did not reach defendants' separate contention that McLean failed to state a claim because the Department of Justice, not the State of California or the State Controller's Office, was McLean's "employer" for purposes of section 203. At McLean's request, the trial court sustained her demurrer without leave to amend so that she could seek appellate review of the court's construction of section 203.

4

The Court of Appeal reversed in relevant part, holding that sections 202 and 203 apply when an employee "quits to retire." The Court of Appeal also rejected the State's alternative argument that the trial court had properly sustained the demurrer because McLean had erroneously sued the State of California, rather than the Department of Justice.[3] The Court of Appeal concluded that the "State of California clearly was McLean's employer" for purposes of the Labor Code's prompt payment obligations, reasoning that McLean was a civil service employee, and " '[t]he civil service includes every officer and employee of the State except as otherwise provided in th[e] Constitution.' " (Cal. Const., art. VII, § 1, subd. (a).) The court further noted that "Sections 202 and 203 apply 'to the payment of wages of employees directly employed by the State of California,' " and "subdivision (b) of section 202 refers to 'the state employer' and subdivision (c) of that section refers to 'a state employee.' " In response to defendants' contention that McLean lacks standing to represent employees of state agencies other than the Department of Justice, the court reiterated its conclusion that McLean's employer is the State of California but otherwise declined to address any issue regarding McLean's class allegations.

We granted review.

## II.

As noted, Labor Code section 202 requires prompt payment of wages to "an employee not having a written contract for a definite period [who] *quits* his or her employment." (§ 202, subd. (a), italics added.) Section 203 similarly specifies that an employer is subject to waiting-time penalties if it "willfully fails to pay . . .

---

[3] The Court of Appeal affirmed the trial court's decision insofar as it dismissed the State Controller's Office from the suit, reasoning that an action against that office is, in effect, an action against the State. No party has sought review of this holding, and the issue is not before us.

5

in accordance with Section[] . . . 202 . . . any wages of an employee who is discharged or who *quits*." (§ 203, subd. (a), italics added.) The State contends that McLean, having retired from state employment, did not "quit" her employment within the meaning of sections 202 and 203, and therefore is not entitled to prompt payment of wages and waiting-time penalties under those provisions.

"We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose. [Citation.] '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027 (*Brinker*).)

The Labor Code does not define the term "quit," and the regulations of the Department of Industrial Relations, Division of Labor Standards Enforcement — the state agency charged with interpreting and enforcing wage and hour laws (see Lab. Code, §§ 82, 90.5, 95, subd. (a)) — provide no relevant interpretive guidance. We therefore begin by considering the word's ordinary meaning. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83-84 (*Smith*).) When section 203 was enacted, as today, the term "quit" was ordinarily used to mean "to stop doing a thing; to cease," and, in the employment context, "to leave one's employment." (Webster's 2d New Internat. Dict. (1934) p. 2045.) So understood, the term easily encompasses withdrawal from employment for the purpose of retiring, as it encompasses withdrawal for other purposes. (Cf. *id*. at p. 2128 [defining "retire" to mean, among other things, "[t]o withdraw from office, a public station, business, or the like"].) It is true, as the State observes, that the word "retire" generally connotes permanent withdrawal from gainful employment — a

6

connotation not shared by the word "quit." But the ordinary meaning of the word "quit" is broad enough to encompass a voluntary departure from a particular employment, whatever its motivation: an employee who retires, no less than an employee who ends one job to start another, has "stopped," "ceased," or "left" her employment.

This understanding of the meaning of the word "quit" accords with the role section 202 plays in the statutory scheme. The Legislature's apparent purpose in enacting the prompt payment provisions was to ensure that employers make prompt payment of final wages upon the termination of the employment of a person who does not have a contract for a definite period — whether the employment is terminated involuntarily, by discharge (§ 201), or voluntarily, by quitting (§ 202). The statutory deadlines for making payment differ depending on whether the employment is terminated voluntarily or involuntarily, but the obligation to make prompt payment does not. (Compare § 201 [requiring immediate payment upon discharge] with § 202 [requiring payment within 72 hours of the time of quitting unless the employee has given 72 hours' previous notice].) In their operation, sections 201 and 202 closely resemble Labor Code sections 2926 and 2927, which provide that employees who were not employed for a specified term are entitled to "compensation for services rendered up to the time" they were "dismissed" or "quit[]." The entitlement to prompt payment of final wages, like the entitlement to the wages themselves, extends to employees whose employment is terminated, whether by discharge or by quitting. The statute contains no suggestion that the Legislature intended to create a third category consisting of employees whose employment is terminated by retirement, who would be specially disqualified from seeking prompt payment of final wages.

The State's contrary argument relies heavily on the 2002 amendments to the prompt payment provisions, which added special rules concerning paying out

7

accrued leave wages to employees separating from state service.**4**  As amended,
section 202, subdivision (a) (section 202(a)) sets out a default prompt payment
rule that requires prompt payment of all wages due to an employee "at the time of
quitting," while each of the new provisions, subdivisions (b) and (c), sets out an
exception governing the payment of accrued leave wages to state employees.
Subdivision (b) provides, as relevant here, that, "[n]otwithstanding any other
provision of law, the state employer shall be deemed to have made an immediate
payment of wages under this section" for, among other things, accrued leave
wages "to which the employee is otherwise entitled due to a disability retirement"
if the employee chooses to have the funds deposited into a retirement account in
accordance with specified procedures.  Similarly, subdivision (c) provides that,
"[n]otwithstanding any other provision of law, . . . a state employee [who] quits,
retires, or disability retires from his or her employment with the state" may
authorize her employer to defer paying out her accrued leave wages until the
following calendar year.

　　The State argues that section 202, subdivision (c)'s specification that its
special deferred-payment rule applies "when a state employee quits, retires, or
disability retires" demonstrates that the Legislature understood that a "retirement"
is not the same thing as a "quit"; otherwise the references to retirements in section
202, subdivision (c) would be superfluous.  The separate references to quitting and
retiring, the State contends, reflect the Legislature's recognition that in the context

---

**4**　　"Wages" include various types of employment benefits to which employees
are entitled as a part of their compensation, among them paid leave.  (*Schachter v.*
*Citigroup, Inc*. (2009) 47 Cal.4th 610, 618; see also *Suastez v. Plastic Dress-Up*
*Co*. (1982) 31 Cal.3d 774, 779-780 [vacation pay is a form of "wages"].)

of public employment, resignation, retirement, and disability retirement are different types of separation, each governed by a separate set of procedural requirements. (See, e.g., Gov. Code, §§ 19996, 19996.1, 21150, 21060.) We are not persuaded that by making specific reference to retirement in the 2002 amendments, the Legislature impliedly excluded retirees from the benefit of the long-standing general rule entitling employees to prompt payment of wages upon "quitting" their employment. The Legislature may simply have intended to remove any doubt that retirees, like other state employees separating from service, may elect to defer payment of accrued leave wages in accordance with subdivision (c), despite the general prompt payment rule of subdivision (a). (Cf., e.g., *Ali v. Federal Bureau of Prisons* (2008) 552 U.S. 214, 226 [noting that drafters sometimes include " 'technically unnecessary' examples . . . 'out of an abundance of caution' "], citing *Fort Stewart Schools v. FLRA* (1990) 495 U.S. 641, 646; *People v. Cruz* (1996) 13 Cal.4th 764, 782-783 [declining under similar circumstances to give effect to the canon against surplusage].) And indeed, considering subdivision (c) in its broader statutory context, this seems the most likely conclusion. If employers were not already required by section 202(a) to promptly pay out the final wages of retirees, why would the Legislature have thought it necessary to specify that retirees, like other departing employees, are entitled to the benefit of a special rule authorizing deferred payment of accrued leave wages?

Ultimately, the inclusion of the separate reference to retirement in section 202, subdivision (c) tends to support, rather than undermine, the conclusion that retirees fall into the broader category of employees who have "quit" their employment within the meaning of the general prompt payment rule of section 202(a) and section 203. The legislative history of section 202, subdivisions (b) and (c) confirms this conclusion. The history shows that the Legislature enacted

9

those provisions not to cabin the reach of sections 202(a) and 203, but rather to rectify certain unintended consequences of the 2000 legislation that had extended section 202(a)'s prompt payment requirement to state employees. An enrolled bill report for the 2002 legislation amending section 202 indicates that subdivisions (b) and (c) were added to address two problems. (Dept. of Personnel Admin., Enrolled Bill Rep., Assem. Bill No. 1684 (2001-2002 Reg. Sess.) May 15, 2002, p. 3 (Assembly Bill No. 1684).) First, before the 2000 amendment extending prompt payment protections to state employees, the state had allowed employees to "rollover into a subsequent tax year lump sum payments for accrued leave due the employee upon separation." (*Ibid.*) This policy was helpful to those state employees whose income tax rate was likely to be lower in the year following their departure, as is typically the case when an employee retires. By expanding the Labor Code's prompt payment protections to cover state employees — thereby requiring the state employer to tender payment to state employees at or near the time they "quit" or were "discharged" — the 2000 amendments had effectively precluded this practice. In enacting subdivision (c) of section 202, together with parallel modifications to section 201 (governing discharges) and a corresponding exception to Labor Code section 219 (otherwise prohibiting private agreements purporting to set aside prompt payment obligations), the Legislature in 2002 removed the barriers to such agreements. (See Lab. Code, §§ 201, 219, subd. (b).)[5] Second, the prompt payment obligations made it logistically difficult for the

_____

[5]     Labor Code section 219, also made applicable to the State by the 2000 amendments to section 220, provided that "no provision of this article can in any way be contravened or set aside by a private agreement . . . ." (See Lab. Code, § 219, subd. (a).) Assembly Bill No. 1684 amended section 219 to provide an exception applicable when "the state employer . . . authoriz[es] employees who quit, or are discharged from, their employment with the state to take payment for any unused or accumulated vacation, annual leave, holiday leave, sick leave to

*(Footnote continued on next page.)*

10

State to pay employees' final wages directly into their supplemental retirement accounts on a pre-tax basis. As the enrolled bill report observed, the "shortened time frames" for payment of final wages provided for in sections 201 and 202 had placed the State at risk of being assessed penalties under section 203 "in the event the lump sum contribution cannot be tendered to the employee's supplemental retirement plan . . . within the time frame specified for payment under the Labor Code." (Dept. of Personnel Admin., Enrolled Bill Rep., Assem. Bill No. 1684, *supra*, p. 3.) The 2002 amendment added subdivision (b) for the purpose of restoring the State's practical ability to "contribute the cash value of [employees'] accrued leave . . . to an employer sponsored 401(k), 403b, and/or 457 Plan on a pre-tax basis." (*Ibid*.)

The State also notes that the statute presently in force includes various provisions setting out modified prompt payment obligations for persons holding specific types of employment, including temporary workers, motion picture industry employees, oil industry workers, and agricultural employees, in which short-term employment is common or logistical concerns otherwise render

---

*(Footnote continued from previous page.)*

which the employee is otherwise entitled due to a disability retirement, or time off to which the employee is entitled by reason of previous overtime work where compensating time off was given by the appointing power, as provided in Section 201 or 202." (Stats. 2002, ch. 40, § 8, p. 462.) As the Legislative Counsel's digest explains, before the amendment, "[e]xisting law prohibit[ed] the contravention or setting aside by a private agreement of certain laws prescribing the frequency of wage payments"; the amendment provided "that a state employer does not violate that prohibition by authorizing employees who quit or are discharged to take payment for unused or accumulated vacation or other leave." (Legis. Counsel's Dig., Assem. Bill No. 1684 (2001-2002 Reg. Sess.) 6 Stats. 2002, Summary Dig., p. 26.)

11

infeasible immediate payment upon termination of employment. (Lab. Code, §§ 201.3, 201.5, 201.7 & 205.) The State argues that these provisions demonstrate that the Legislature did not intend for sections 201, 202, and 203 to apply comprehensively to all employees whose employment is terminated. But the Legislature's decision to enact modified prompt payment rules for employees in these industries provides no support for the State's contention that the Legislature intended to exempt a different class of employees — consisting of all persons who leave their employment in order to retire — from the prompt payment protections of sections 202 and 203.[6]

Practical considerations reinforce our conclusion that the application of the prompt payment provisions do not turn on the nature of the employee's post-employment plans. Although an employer may often know in advance that an employee plans to retire from employment altogether, that will not always be the case. Indeed, an employee's intentions at the time of quitting may be unclear even to the employee herself. It is unlikely that the Legislature would have intended the obligation to make prompt payment of final wages turn on matters that may be unknown, and perhaps unknowable, to the employer at the time payment is due.

---

[6] The State also argues that the wording of Labor Code section 201.5, subdivision (d) — which specifies that, with respect to employees hired for a limited duration to support the production or broadcasting of motion pictures, "an employment terminates when the employment relationship ends, whether by discharge, lay off, resignation, completion of employment for a specified term, *or otherwise*" (italics added) — demonstrates that when the Legislature wishes to cover all forms of separation from employment, it knows how to say so. We are not persuaded that the inclusion of the word "otherwise" in the 2006 statute that added this special rule for motion picture workers (Stats. 2006, ch. 824, § 2, p. 6473) impliedly limits the scope of the long-standing general requirement that an employer promptly pay final wages upon an employee's "quitting."

Finally, interpreting sections 202 and 203 to cover retiring employees is consistent with the purposes of the prompt payment provisions.  (See *Brinker*, *supra*, 53 Cal.4th at pp. 1026-1027 [wage and hour laws enacted for the protection of workers " 'are to be liberally construed with an eye to promoting such protection' "].)  As we explained in *Smith*, "California has long regarded the timely payment of employee wage claims as indispensable to the public welfare: 'It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due.' "  (*Smith*, *supra*, 39 Cal.4th at p. 82, quoting *In re Trombley* (1948) 31 Cal.2d 801, 809-810; see also *Kerr's Catering Service v. Department of Indus. Relations* (1962) 57 Cal.2d 319, 326 ["California courts have recognized the public policy in favor of full and prompt payment of wages due an employee."].)  Section 203 implements "this fundamental public policy regarding prompt wage payment."  (*Smith*, at p. 82, citing *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 360.)

The statutory policy favoring prompt payment of wages applies to employees who retire, as well as those who quit for other reasons.  It may be, as the State contends, that the concerns motivating the prompt payment provision are lessened in the case of a retiree who immediately begins collecting retirement benefits, as opposed to an employee who quits without any source of future income secured.  But those concerns are not eliminated altogether:  Even those retirees who begin immediately to collect retirement benefits may have a significantly reduced income level as compared to when they were working.  In any event, the State points to nothing in the language of sections 202 and 203 or in their legislative history that suggests the Legislature believed retirees to have less

13

need of prompt wage payment than those who quit to pursue other employment opportunities. In sum, as the Court of Appeal correctly concluded in this case, sections 202 and 203 apply to persons who retire from their employment, just as they apply to those who voluntarily leave their employment for other reasons.

### III.

The State argues in the alternative that the trial court properly sustained the demurrer without leave to amend because McLean did not sue the proper defendant. Under section 203, the proper defendant in a suit alleging the willful failure to make prompt payment of wages is the plaintiff's "employer." The State argues that in the context of state employment, the term "employer" refers solely to the specific department or agency for which the employee worked — in McLean's case, the Department of Justice — and not the State of California as a whole.

We begin, as we must, by considering the text of the statute. (See, e.g., *Martinez v. Combs* (2010) 49 Cal.4th 35, 51.) As the State acknowledges, its proposed interpretation of the term "employer" does not depend on any explicit statutory instruction. The Labor Code provides no generally applicable definition of the term and the prompt payment provisions contain none, whether in the context of state employment or otherwise. And it appears that no previous state or federal case has addressed the meaning of "employer" for the purposes of section 203.**7**

---

**7**     Other divisions of the Labor Code provide definitions of "employer" applicable to the provisions contained within those divisions. (See Lab. Code, § 3300 [defining "employer" for purposes of workers' compensation]; *id*., § 6304 [defining "employer" for purposes of workplace safety statutes]; *id*., § 245.5, subd. (b) [defining "employer" for purposes of the Healthy Workplaces, Healthy Families Act of 2014].) McLean urges us to rely on *Colombo v. State of California* (1991) 3 Cal.App.4th 594, but that case holds only that the State is the

*(Footnote continued on next page.)*

14

The State's argument rests primarily on inferences drawn from section 202, subdivisions (b) and (c), which refer to situations in which "the state employer" is permitted to defer payment of accrued leave wages based on the employee's submission of a written election to his or her "appointing power." The State argues that the combined effect of the references to "the state employer" and "the appointing power" is to make clear that the proper defendant in a state employee's section 203 suit is the individual department or agency for which he or she worked, rather than the State of California as a whole. An "appointing power," the State notes, is a "person or group having authority to make appointments to positions in the state civil service" (Gov. Code, § 18524), generally the head of a department or agency (see, e.g., *id.*, § 12502 [conferring on the Attorney General the power to "appoint and fix the salaries" of deputy attorneys general and other employees]). The State observes that the appointing power generally bears responsibility for setting the terms and conditions of employment, and that state civil servants like McLean are hired and supervised by the specific state entity for which they work. (See Gov. Code, §§ 19050 [appointing power makes appointments to positions in the state civil service], 11152 [department head responsible for assigning duties to employees and adopting rules governing department's operation].) The State also points out, as relevant here, that after the Legislature extended prompt payment protections to state employees in 2000, the state administrative manual was amended to say that "[d]epartments are

_____

*(Footnote continued from previous page.)*

relevant "employer" for purposes of the exclusive remedy available to state employees under the workers' compensation laws.

15

responsible to ensure that payments to separating employees are in accordance with Labor Code Sections 201 and 202."  (Dept. Gen. Services, State Administrative Manual (2014) § 8580.4 (rev. 06/05).)  It argues based on this amendment that the department is responsible for ensuring compliance with section 202, and therefore is the "employer" for purposes of section 203.

McLean, by contrast, interprets the term "state employer" in section 203 to mean "the State as an employer."  Her proposed interpretation rests primarily on Labor Code section 220 (section 220), which provides that, while certain provisions of the Code (not including sections 202 and 203) "do not apply to the payment of wages of employees directly employed by the State of California," "all other employment" — with the exception of "the payment of wages of employees directly employed by any county, incorporated city, or town or other municipal corporation" — is "subject to these provisions."  McLean contends that by making sections 202 and 203 applicable to "all other employment" — including the payment of wages of "employees directly employed by the State of California" — section 220 effectively defines "employer," in the context of state employment, to mean the State of California, thus making the state as a whole liable for prompt payment violations under section 203.  The Court of Appeal apparently agreed with this argument, concluding that to accept the State's contrary interpretation would be "to find the words do not mean what they say."

We agree with the Court of Appeal that the combined references to "state employer" and the employee's "appointing power" cannot bear the weight the State would place on them.  Section 202, subdivisions (b) and (c) do not say, as the State would have it, that the sole "employer" of a state employee *is* his or her "appointing power"; they merely specify the role of the "appointing power" in giving effect to a state employee's election to defer payment.  At the same time, we are not convinced that the term "state employer" unambiguously means "the

16

State of California, acting as an employer." Although the term *could* refer to the State of California as a whole, it also could be read to refer to a specific state agency or department in which a state employee is employed. Nor does the reference to "employees directly employed by the State of California" (§ 220) in describing the coverage of certain provisions of the Labor Code unambiguously demonstrate a legislative intent to treat the State of California, as a whole, as the "employer" under the prompt payment provisions. The evident purpose of the reference, rather, is to distinguish between, on the one hand, employees of state agencies, departments, and other components of state government — who, after the 2000 amendments, are now covered by the prompt payment provisions — and, on the other, persons employed by counties, incorporated cities, and other political subdivisions of the State, whom the provisions do not cover. (Compare § 220, subd. (a) [referring to "employees directly employed by the State of California"] with § 220, subd. (b) [referring to "employees directly employed by any county, incorporated city, or town or other municipal corporation"].)

In the absence of explicit statutory direction, we begin from the premise that in the context of public employment, as in other contexts, an individual may have multiple employers, both direct and indirect. In this case, one might say that McLean's employer was the Department of Justice and also that her employer was the State of California; the Department of Justice is, after all, a department of the state government. (Gov. Code, § 15000.) This much appears undisputed, and indeed, the State made clear at oral argument that it would have no objection had McLean merely named the State of California as a defendant on the pleadings.**8**

---

**8** As the State tells us, when a plaintiff names the State as a defendant in a suit alleging wrongdoing by one of its agencies, it ordinarily will respond to the complaint in the name of the State of California, "by and through" the allegedly

*(Footnote continued on next page.)*

17

The core of the State's objection is, rather, that McLean's complaint — and, in particular, her class claim on behalf of all "employees employed by [the State of California]" — appears designed to draw into the dispute state departments and agencies that the State contends cannot, as a matter of law, bear responsibility for the prompt payment violations she alleges.

Whether an entity is a proper defendant to a section 203 claim turns on whether, as a factual matter, that entity acted as an "employer" in the sense of bearing responsibility for the alleged failure to make prompt payment of wages. As noted, McLean's complaint alleges that she was employed by the State of California and that when employees resign or retire from their employment with the State of California, a common payroll system governed by the state controller is responsible for disbursing the wages owed. And it further alleges, on information and belief, that the State of California and the controller's office engaged in a systematic course of denying timely payment of wages to state employees who resigned or retired from their employment during a five-month period between November 2010 and March 2011.

The authorities on which the State relies indicate that responsibility for ensuring compliance with sections 201 and 202 will generally rest with an individual's employing agency. But it is not inconceivable that other state entities may bear responsibility for an alleged prompt payment violation. As the State

_____

*(Footnote continued from previous page.)*

responsible agency. This practice is consistent with the understanding that, in the context of government litigation, courts must sometimes "look behind names that symbolize the parties" to determine the real parties in interest. (*United States v. I. C. C.* (1949) 337 U.S. 426, 430; see 4 Witkin, Cal. Procedure (5th ed. 2008) § 68, p. 128.)

acknowledges, "the Legislature, the Governor, the Department of Finance, the California Department of Human Resources, and the Controller all play a role in the overall administration of certain aspects of the state civil service." (Cf. *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1010-1041 [discussing roles of various government entities in imposing furloughs for state employees]; *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1320-1341 [discussing roles of various government entities in implementing salary reductions for state employees].) As particularly relevant here, the State Controller's Office is charged by statute with operating a "uniform state payroll system" for state employees, which it administers based on information supplied to it by individual departments and agencies. (Gov. Code, §§ 12470, 12475; see *id.*, § 1150, subd. (a) [defining the term "state employee" to mean "all persons who receive wages for services through the uniform payroll system established and administered by the Controller under Section 12470"].) The state administrative manual further specifies that the State Controller's Office computes pay and retirement contributions, prepares payroll and salary warrants, and remits funds to retirement systems (Dept. Gen. Services, State Administrative Manual, *supra*, § 8520 (rev. 4/01)), although departments may issue checks from their own revolving funds when, among other things, "separating employees are in immediate need of their final salary payments" (*id.*, § 8595 (rev. 12/11)).

At this stage we cannot, as the State asks, categorically conclude that a state employee who alleges wrongdoing on the part of the State Controller's Office, rather than focusing solely on the conduct of the department or agency in which she works, has necessarily failed to state a claim under section 203.[9] Accordingly, the

---

[9] We acknowledge the State's concern that McLean's class claim calls for drawing into the dispute other agencies and departments that it believes can bear no

*(Footnote continued on next page.)*

19

Court of Appeal appropriately rejected the State's alternative argument that the trial court had properly sustained the demurrer on the ground that McLean had erroneously sued the State of California.

## IV.

The judgment of the Court of Appeal is affirmed.


**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

---

*(Footnote continued from previous page.)*

responsibility for the violation she alleges. But this concern is, at best, premature. As noted, McLean's complaint alleges a failure in the uniform state payroll system during a period of five months, and she claims that the information she will need to prove a systemic failure on a classwide basis is likely to be held by the State Controller's Office, and perhaps the Department of Human Resources or the retained third-party administrator of the state retirement plan. As this case comes to us on review of a demurrer, questions concerning the proposed class, class certification, and the proper scope of discovery are not before us; we accordingly decline to express views on these issues.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** McLean v. State of California

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 228 Cal.App.4th 1500
**Rehearing Granted**

_____

**Opinion No.** S221554
**Date Filed:** August 18, 2016

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Raymond M. Cadei

_____

**Counsel:**

Kershaw, Cutter & Ratinoff, William A. Kershaw, Lyle W. Cook, Stuart C. Talley and Ian J. Barlow for Plaintiff and Appellant.

Barbara A. Jones and Laurie McCann for AARP as Amicus Curiae on behalf of Plaintiff and Appellant.

The Law Offices of Brooks Ellison and Patrick J. Whalen for California Attorneys, Administrative Law Judges and Hearing Officers in State Employment as Amicus Curiae on behalf of Plaintiff and Appellant.

David A. Sanders; Messing Adam & Jasmine, Gregg McLean Adam and Jonathan Yank for California Correctional Peace Officers' Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Susan Slager, Acting Assistant Attorney General, Alicia Fowler and Chris Knudsen, Assistant Attorneys General, Fiel D. Tigno, William T. Darden and Aimee Feinberg, Deputy Attorneys General, for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William A. Kershaw
Kershaw, Cutter & Ratinoff
401 Watt Avenue
Sacramento. CA  95864
(916) 448-9800

Aimee Feinberg
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 622-2196